# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONALD E. JAMES, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 18 C 4788 |
| v. | )<br>) Hon. Virginia M. Kendall |
| GET FRESH PRODUCE, INC. | )<br>) |
| Defendant. | )<br>) |

## **MEMORANDUM OPINION AND ORDER**

After the Court partially dismissed his employment discrimination claims (Dkt. 23), Plaintiff Ronald E. James ("James") filed his First Amended Complaint against Defendant Get Fresh Produce, Inc. ("Get Fresh"). (Dkt. 25). James realleges his former claims of racial discrimination, religious accommodation, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e2, *et seq*. Currently before the Court is Defendant's Motion to Dismiss. (Dkt. 26). For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

## **BACKGROUND**

The facts of this case are sufficiently outlined in the Court's first Order granting in part and denying in part the Defendant's Motion to Dismiss, familiarity with which is assumed here. Any additional factual background provided in the First Amended Complaint is noted and accepted as true for the purpose of reviewing Defendant's Motion to Dismiss. *See Wicik v. Cty. of Cook*, 2018 WL 3876584, at \*1 (N.D. Ill. 2018) (citing *Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013)).

The Court construes James' *pro se* allegations liberally. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). Additionally, the Court will incorporate facts set forth in his response brief that are consistent with the allegations in the Complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.") (quotation and citation marks omitted).

James is African-American and is also a Jehovah's Witness. *Id.* James regularly participates in religious meetings, conventions, and door-to-door ministry service as a part of his religious commitments. (Dkt. 23, pg. 2). James began working for Get Fresh in 2007 as a delivery driver, and he is presently employed there. *Id.* He is required to work six days a week, and his regularly scheduled day-off is Sunday. *Id.* As a union employee, James' vacation requests are governed by a collective bargaining agreement ("CBA"), under which drivers are permitted to request "two (2) consecutive weeks of vacation and five (5) individually scheduled days" prior to December 31 for the following year. *Id.*; (Dkt. 30, Ex. A). Under this structure, requests are granted on a seniority basis and after the year begins, employees can request vacation days based on the remaining available days on a first come, first served basis. (Dkt. 30, Ex. A).

James filled out his vacation request form for the 2018 calendar year on November 7, 2017, and returned the form to a supervisor the next day. (Dkt. 23, pg.

2). Among other dates, he requested days off on March 31, 2018 and June 30, 2018. (Dkt. 25, pg. 4). Get Fresh granted several of James' requested days off but denied his requests as to March 31 and June 30. *Id.*; (Dkt. 23, pg. 2). With respect to the March 31 request, Get Fresh explained that James would have to wait until the end of the bid process to request that day off. (Dkt. 23, pg. 3). If the date was still available, James would have to submit a request subject to the first come, first served process outlined in the CBA. *Id.*

March 31, 2018 was an important day for Jehovah's Witnesses, as it served as the celebration of "the death of Christ." *Id.* at 2–3; (Dkt. 29, pg. 2). James attended multiple meetings with supervisors and managers in an attempt to negotiate the March 31 day off. (Dkt. 23, pg. 3). James alleged that he felt intimidated at these meetings. *Id.* He also claims that he explained the religious importance of the death of Christ to his supervisors, but that they asked him to pick another day and "did not care." *Id.*; (Dkt. 29, pg. 2). After five meetings, Get Fresh refused to allow James to take March 31 off. *Id.*; (Dkt. 25, pg. 4). During this time, James submitted a Charge of Discrimination to the EEOC on December 7, 2017. (Dkt. 1, pg. 8); (Dkt. 23, pg. 3).

A few weeks later, Get Fresh asked James to work on Sunday, December 24, 2017, to assist in accommodating the CBA-recognized Christmas vacation day. (Dkt. 29, pg. 3); (Dkt. 30, Ex. A). James saw this request as discriminatory because Get Fresh accommodated other drivers' celebrations of the birth of Christ, but denied him the opportunity to celebrate the death of Christ. (Dkt. 23, pg. 3–4); (Dkt. 1, pg. 19). James wrote a letter to Get Fresh explaining that he typically has Sundays off for

religious commitments, and at some point, he wrote another letter in response to Get Fresh's request that James explain his Sunday routine. (Dkt. 23, pg. 4).

On February 28, 2018, James submitted a request to take vacation days on June 29 and 30 to attend a "religious meeting." *Id.* His request was granted as to June 29 and denied as to June 30. *Id.* Later, in a letter dated March 9, 2018, Get Fresh encouraged James to request the March 31 day-off, as the date was still available, and the company recognized that it was "an important day for [James] based on [his] religious practices." *Id.*; (Dkt. 15, pg. 10). The letter also reiterated that the June 30 request remained denied as the date was closed to further requests. (Dkt. 23, pg. 4); (Dkt. 15, pg. 10). James did not request to have March 31, 2018 off. (Dkt. 23, pg. 5). Soon after James received the letter, Get Fresh asked James to sign a religious accommodation form to "try to intimidate him." (Dkt. 23, pg. 4). James was the only employee asked to sign the form and he did not sign it. *Id.* He felt that his religious beliefs were not respected based on Get Fresh's lack of accommodation. *Id.* James considers this behavior to be harassment and alleges that it made him feel physically ill (reported high blood pressure), scared, confused, and helpless. *Id.*; (Dkt. 29, pg. 4).

Another letter from Get Fresh to James, dated March 26, 2018, explained that Get Fresh scheduled March 31 as a day off for James, even though he never requested the date following the March 9 letter. (Dkt. 23, pg. 5). However, James contends that Get Fresh called him early on the morning of March 31 and told him to come into work. *Id.* The March 26 letter also granted James the June 30 day-off as he had

previously requested, noting that a driver had changed his schedule and James was the next in line to request that day off. *Id.*

James received his Dismissal and Notice of Rights from the EEOC on April 18, 2018. (Dkt. 25, pg. 4). Apart from his claims concerning the vacation requests, James generally alleges harassment, religious and racial discrimination, and retaliation under Title VII. *See id.* While unclear and disorganized, the Court has made reasonable inferences within James' First Amended Complaint in attempt to piece these claims together. James alleges that Get Fresh treats other races better than black drivers, and that it subjected him to "harsh treatment and work environment." (Dkt. 25, pg. 4). He specifically alleges that "Hispanic Drivers get great privileges at work, better truck and routes, etc." (Dkt. 29, pg. 4). Since his vacation requests were made, he alleges that Get Fresh has harassed him by "not speaking, being rude, [assigning him] poor trucks, verb[al] threats." (Dkt. 25, pg. 4). He also alleges retaliation in the form of not paying for his FMLA day off on July 4, 2018. *Id.* In sum, he alleges that he has suffered from "undue hardship, trying to get hotel reservation, not knowing will I be off to go, emotional stress, high blood pressure…and other hardship." (Dkt. 29, pg. 3).

While the Complaint itself is silent as to the law which James purports to bring his claims under, his Response to the Defendant's Motion to Dismiss alleges that Get Fresh violated Title VII of the Civil Rights Act of 1964. *See* (Dkt. 25); *see also* (Dkt. 29, pg. 3).

## LEGAL STANDARD

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In considering a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true and construe all reasonable inferences in favor of the plaintiff. *See Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018). To overcome a motion to dismiss, a complaint must allege facts which "'plausibly suggest that the plaintiff has a right to relief, raising the possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A complaint that pleads facts that are conclusory in nature and devoid of "further factual enhancement" will be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557). In evaluating a *pro se* complaint, the Court applies a less stringent standard than it applies to formal pleadings drafted by lawyers. *Smith*, 803 F.3d at 309. But, the Court need not ignore facts set forth in the complaint that undermine the plaintiff's claim, nor is the Court required to accept the plaintiff's legal conclusions. *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 900 (N.D. Ill. 2016).

## DISCUSSION

Get Fresh moves to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim, noting that it is uncertain if harassment is plead at all. While James realleges his religious-accommodation claim, Get Fresh again does not appear to challenge the substantive merits of this claim. *See* (Dkt. 23, pg. 7). Indeed, the Court has already determined this claim was adequately pleaded in its Order denying the Motion to Dismiss. *See* (Dkt. 23). The remaining allegations regarding racial discrimination, harassment, and retaliation are discussed in turn.

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e. "[A] plaintiff alleging employment discrimination under Title VII may allege these claims quite generally." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) (holding that a religious discrimination plaintiff need only say that the employer "h[eld] the worker's religion against him")). Neither the Federal Rules of Civil Procedure nor controlling precedent contemplate that a heightened pleading standard exists for employment discrimination cases. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). "In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo*, 526 F.3d at 1085; *see also Samovsky v. Nordstrom, Inc.*, 619 F. App'x 547, 548 (7th Cir. 2015).

### A. Exhaustion

Litigants proceeding under a theory of a Title VII unlawful employment practice must file a timely charge of discrimination with the EEOC prior to litigation. *See* 42 U.S.C. § 2003–(5)(e)(1); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2014). James filed a timely Charge, and the merits of this Charge were previously examined by the Court. *See* (Dkt. 23, pgs. 8–11). Because "reasonably related…EEOC charges" are expected to develop upon investigation, James' Complaint adequately encompassed the alleged discrimination in the form of the denied vacation requests for March 31 and June 30. *Id.* at 9–10 (quoting *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999)).

However, the Court also previously determined that James' racial discrimination claim based upon allegations that Hispanic drivers receive better treatment is not within the scope of the EEOC Charge claims. *See id.* at 11. The First Amended Complaint does not present any relevant facts or information to warrant a different result this time around. James has not shown that he filed a timely EEOC charge alleging racial discrimination, and therefore the Court must again dismiss this claim for failure to exhaust administrative remedies under Title VII. *See Mosley v. Board of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006) ("A failure to exhaust is normally considered to be an affirmative defense….") (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)). Therefore, James has successfully exhausted his administrative remedies with respect to the claim of racial

discrimination only as it pertains to the requested days off, along with his claims for religious accommodation, harassment, and retaliation.

   B.   **Racial Discrimination under Title VII**

While his racial discrimination claim partially survives the threshold exhaustion requirement, it is still insufficiently plead. Similar to the deficiencies found in his original Complaint, the First Amended Complaint fails to plead any facts which tie Get Fresh's rejection of James' vacation requests to his race. *See* (Dkt. 25); *and* (Dkt. 29). The EEOC Charge clearly indicates that Get Fresh's actions concerned James' religion. The First Amended Complaint and James' Response to Get Fresh's Motion to Dismiss are similarly focused on the argument that Get Fresh's denial was based on religion. *See* (Dkt. 1, pg. 8) (explaining that he "requested a religious accommodation" and was not allowed to "modify my work schedule in order to attend religious events"); (Dkt. 25, pg. 4) (beginning his Complaint with "I Ronald E. James, ask Get Fresh Produce, Inc. to accommodate my religious request…to worship my God"); *and* (Dkt. 29, pgs. 2–3) (discussing Get Fresh's continued failure to accommodate his religious requests, explaining the negative effects it has on him, and comparing Get Fresh's respect for other religions against his). The only mention of race within James' most recent filings is specifically related to his claim that Hispanic drivers are treated better—a claim which has been dismissed above. Because James has failed to allege facts sufficient to establish that Get Fresh discriminated against him on the basis of his race, his claim of racial discrimination under Title VII is again dismissed.

## C. Hostile Work Environment

To state a Title VII hostile work environment claim, James must allege "(i) that [his] work environment was objectively and subjectively offensive; (ii) that the harassment was based on [his] race; (iii) that the harassment was pervasive or severe; and (iv) that a legal basis exists for holding [Get Fresh] liable." *Cable v. FCA US LLC*, 679 F. App'x 473, 476 (7th Cir. 2017); *see also Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 & n.6 (7th Cir. 2016). In order to demonstrate harassment "that rises to the level of a statutory violation, the plaintiff must prove that his or her work environment was both subjectively and objectively offensive; one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so." *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 947 (7th Cir. 2005) (internal quotation marks omitted). In determining whether a workplace is objectively hostile, the Court considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo v. Bliss*, 864 F.3d 541, 549–50 (7th Cir. 2017).

Again, the alleged conduct here fails to reach the definition of a hostile work environment. In fact, James makes nearly identical allegations in his First Amended Complaint as he did in his original Complaint. *Compare* (Dkt. 1); *with* (Dkt. 25). James previously alleged that "following the denial of his requested vacation days, he had to attend numerous meetings with supervisors, which left him feeling sick,

scared, and stressed with high blood pressure." (Dkt. 23, pg. 13) (citing to (Dkt. 15, pgs. 2–3)). James now alleges that he suffered from substantially the same issues: "undue hardship, trying to get hotel reservation, not knowing will I be off to go, emotional stress, high blood pressure go up from anger…." (Dkt. 29, pg. 3). This "undue hardship" is presumably referring to the meetings James had to attend to resolve his vacation requests. It might also refer to the stress he felt from the uncertainty of his hotel accommodations and trip itinerary. However, indirectly creating uncertainty in an employee's travel plans is not "severe and pervasive" conduct, rather it is the logical consequence of denying an employee's vacation request. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (explaining that refusing preferred vacation schedules is not a materially adverse action) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)).

While James arguably suffered some negative effects from these meetings, they alone do not create a hostile work environment. Even including James' allegations of "not speaking, being rude, poor trucks, verb [sic] threats" with this hostile work environment claim, he fails to name any of the perpetrators of the alleged conduct. (Dkt. 25, pg. 4). The Court cannot do James' work for him and assign blame to Get Fresh or James' supervisors by inference, especially considering the facts which suggest that Get Fresh attempted to resolve his complaints across several meetings, going so far as to offer him both of the relevant days off after he failed to request them himself. *See* (Dkt. 23, pg. 5). That aside, the allegations described do not constitute harassment so severe or pervasive as to alter the conditions of his

employment and create an abusive work environment for Title VII purposes. Thus, the hostile work environment claim is dismissed.

### D. Retaliation

An employer may not retaliate against an employee who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." *See Porter v. City of Chi.*, 700 F.3d 944, 951 (7th Cir. 2012) (quoting 42 U.S.C. § 2000e–3(a)) (internal quotation marks omitted). To state a claim for retaliation, James must allege that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005); *see also Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) ("To plead a Title VII retaliation claim, a plaintiff must (though []he need not use the specific terms) allege that []he engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity."). An adverse employment action in the retaliation context is one which would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted). James has adequately pleaded that he engaged in statutorily protected expression. (Dkt. 23, pg. 14). However, he has failed to sufficiently allege that he suffered an adverse employment action on account of this protected activity.

The structure of James' First Amended Complaint seems to allege that Get Fresh's failure to pay a "FMLA day" following the July 4, 2018 holiday is the only example of retaliation. However, the Court assumes *arguendo* that James' allegations that Get Fresh was "not speaking, being rude, poor trucks, verb threats" are meant to be included in his retaliation claim.

FMLA days, as defined by the CBA, are days off "taken pursuant to the Family and Medical Leave Act[.]" (Dkt. 30, Ex. A). However, James alleges that he did not receive payment for July 4, 2018, which, according to the CBA, is a company-recognized holiday. *Id.* To qualify for regular payment on company-recognized holidays under the CBA, an employee must work the regularly scheduled days before and after the holiday. *Id.* This structure does not reference or relate to FMLA requirements under the CBA or the Family and Medical Leave Act itself. While it is plausible that James had taken time off under the FMLA, there are no allegations that he ever did so in either the original Complaint or the First Amended Complaint. *See* (Dkt. 1); (Dkt. 25). Furthermore, FMLA retaliation is a separate legal argument, *see Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006), which James has inadequately plead. FMLA retaliation is governed by 29 U.S.C. § 2615(a)(2) & (b), which both prohibit discrimination against an individual who opposes practices made unlawful by the FMLA, or against persons who participate in or institute FMLA proceedings or inquiries. *See id.* As the Court recognized in the Order dismissing this portion of his Complaint, "James may see a connection between these acts and his accommodation requests or the filing of his EEOC Charge, [but] the allegation

fails to sufficiently allege any connection…." (Dkt. 23, pgs. 14–15). The Court need not accept James' legal conclusions. *See Johnson*, 203 F. Supp. 3d at 900. Here, the Court declines to entertain this claim based on its conclusory nature.

As for "not speaking" and "being rude," James does not include any information to specify what this means. The general notions of silence and rudeness do not rise to the level of retaliation. *See Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 988–89 (N.D. Ill. 2014) ("Rudeness and ostracism by coworkers and even supervisors do not constitute a materially adverse employment action[].") (first citing *Stutler v. Ill. Dept. of Corrections*, 263 F.3d 698, 704 (7th Cir. 2001); next citing *Parkins v. Civil Constr. of Ill., Inc.*, 163 F.3d 1027, 1039 (7th Cir. 1998)). Additionally, and without further context, his allegations of "poor trucks" and "verb [sic] threats" are wholly conclusory and without connection to his claim of discrimination to the EEOC. James fails to allege that any coworker, supervisor, or person connected to Get Fresh assigned him poor-quality trucks or verbally threatened him. Further, he fails to allege the consequences of either of these actions. "Federal law protects an employee only from retaliation that produces an injury…and by themselves, these threats do not." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (quoting *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009)) (internal quotation marks and citation omitted). James' allegation that he was threatened is one of the few new facts that he alleges in his First Amended Complaint, and there is nothing in the record to explain what "threat" he is referencing. This is the type of claim devoid of "further factual enhancement," which cannot withstand scrutiny.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Without any factual support, there is nothing to link this threat to the sort of harm that James must plead to prevail on his complaint. All reasonably inferred allegations in relation to James' retaliation claim are, accordingly, dismissed.

### **CONCLUSION**

For the aforementioned reasons, Get Fresh's Motion to Dismiss is granted in part and denied in part. Specifically, James' claims of race discrimination, harassment, and retaliation under Title VII are dismissed. The Motion to Dismiss is denied, however, as to James' claim of religious accommodation under Title VII.

_____
Virginia M. Kendall
United States District Judge

Date: March 27, 2019